No. 21-1830

_____

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

Sarah Molina, et al.,
*Plaintiffs/Appellees*,

v.

Daniel Book, et al.,
*Defendants/Appellants*.

_____

Appeal from the United States District Court
Eastern District of Missouri, Eastern Division
The Honorable Audrey G. Fleissig, District Judge

_____

## APPELLEES' SUPPLEMENTAL BRIEF

_____

Anthony E. Rothert
Jessie Steffan
Molly E. Carney
Omri E. Praiss
ACLU of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
(314) 652-3114

Gillian R. Wilcox
ACLU of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111

# TABLE OF CONTENTS

**I. Molina and Vogel engaged in multiple forms of protected First Amendment activity.**................................................................6

*a. Molina and Vogel observed, and Vogel, recorded police-citizen interactions at a distance without interfering*............................................................6

*b. Molina and Vogel exercised their rights of peaceable assembly, first at Page and Walton and then on Euclid on the sidewalk and yard in front of Molina's house.* ................................................................9

*c. Molina and Vogel participated in the protest and intended to convey—by their presence and clothing—a particularized pro-protest message that would be understood by onlookers.* ................................................................11

**II. Molina and Vogel's protected First Amendment activities were "clearly established;" regardless, the officers cannot be entitled to qualified immunity because they acted unreasonably based upon their perception that Molina and Vogel were engaged in First Amendment activities.**................................17

*a. Molina and Vogel's rights were clearly established.* ................................17

*b. Although Molina and Vogel engaged in multiple First-Amendment-protected activities, the pertinent question is whether the police believed they had engaged in such activities.* ................................................................18

Appellate Case: 21-1830    Page: 2    Date Filed: 02/03/2022 Entry ID: 5123839

# TABLE OF AUTHORITIES

*Am. Civil Liberties Union of Ill. v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012)............................................................ 7

*Baribeau v. City of Minneapolis*,
   596 F.3d 465 (8th Cir. 2010)................................................. 14, 15, 17

*Chestnut v. Wallace*,
   947 F.3d 1085 (8th Cir. 2020)............................................. 6, 7, 8, 17

*City of Chicago v. Morales*,
   527 U.S. 41 (1999) ........................................................................ 10

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ........................................................................ 7

*City of Ladue v. Gilleo*,
   512 U.S. 43 (1994) ........................................................................ 11

*Cohen v. California*,
   403 U.S. 15 (1971) ........................................................................ 14

*De Jonge v. State of Oregon*,
   299 U.S. 353 (1937) .................................................................. 9, 17

*Edwards v. South Carolina*,
   372 U.S. 229 (1963) ...................................................................... 11

*Fields v. City of Philadelphia*,
   862 F.3d 353 (3d Cir. 2017)........................................................... 7, 8

*Fordyce v. City of Seattle*,
   55 F.3d 436 (9th Cir. 1995)............................................................... 7

*Gericke v. Begin*,
   753 F.3d 1 (1st Cir. 2014) ................................................................. 7

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ...................................................................... 12

3

*Heffernan v. City of Paterson*,
578 U.S. 266 (2016) ........................................................................ 18, 19

*Hernandez v. Mesa*,
137 S. Ct. 2003 (2017) ........................................................................ 19

*Hoyland v. McMenomy*,
869 F.3d 644 (8th Cir. 2017) ................................................................. 7

*Hughes v. City of New York*,
680 Fed. App'x 8 (2d Cir. 2017) .......................................................... 19

*Hurley v. Irish-Am., Gay, Lesbian & Bisexual Grp. of Boston*,
515 U.S. 557 (1995) ............................................................... 12, 15, 16

*Interactive Digital Software Ass'n v. St. Louis Cnty.*,
329 F.3d 954 (8th Cir. 2003) ............................................................... 16

*Kilpatrick v. King*,
499 F.3d 759 (8th Cir. 2007) ............................................................... 17

*McCullen v. Coakley*,
573 U.S. 464 (2014) ...................................................................... 11, 12

*Naucke v. City of Park Hills*,
284 F.3d 923 (8th Cir. 2002) ................................................................. 7

*Peterson v. Kopp*,
754 F.3d 594 (8th Cir. 2014) ................................................................. 7

*Project Veritas Action Fund v. Rollins*,
982 F.3d 813 (1st Cir. 2020) ............................................................... 17

*Quraishi v. St. Charles Cnty.*,
986 F.3d 831 (8th Cir. 2021) ......................................................... 17, 19

*Quraishi v. St. Charles Cty.*,
2019 WL 2423321 (E.D. Mo. June 10, 2019) ..................................... 19

*Robb v. Hungerbeeler*,
370 F.3d 735 (8th Cir. 2004) ............................................................... 15

4

*Saucier v. Katz*,
    533 U.S. 194 (2001) ........................................................................... 18

*Sellers v. Johnson*,
    163 F.2d 877 (8th Cir. 1947)............................................................. 10

*Smith v. City of Cumming*,
    212 F.3d 1332 (11th Cir. 2000)........................................................... 7

*Spence v. Washington*,
    418 U.S. 405 (1974) ........................................................................... 13

*Tindle v. Caudell*,
    56 F.3d 966 (8th Cir. 1995)................................................................ 16

*Turner v. Lieutenant Driver*,
    848 F.3d 678 (5th Cir. 2017) ............................................................... 7

*United States v. Cruikshank*,
    92 U.S. 542 (1875) ............................................................................... 9

*United States v. Grace*,
    461 U.S. 171 (1983) ........................................................................... 13

*Walker v. City of Pine Bluff*,
    414 F.3d 989 (8th Cir. 2005)........................................................... 6, 7

*West Virginia Bd. of Ed. v. Barnette*,
    319 U.S. 624 (1943) ........................................................................... 15

Appellate Case: 21-1830   Page: 5   Date Filed: 02/03/2022 Entry ID: 5123839

Molina and Vogel faced retaliation for observing and recording police-citizen interactions, peaceably assembling, and expressing their pro-protest message. Their right to engage in these First-Amendment-protected activities without government retaliation was clearly established at the time.

## I.    Molina and Vogel engaged in multiple forms of protected First Amendment activity.

### a.    Molina and Vogel observed, and Vogel recorded, police-citizen interactions at a distance without interfering.

Molina's observation and Vogel's observation and recording of the police were First Amendment activities.

This Court has held the rights to observe and to record police-citizen interactions are clearly established. *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020) (affirming denial of qualified immunity to officer who had detained individual observing traffic stops in February 2015). The Court in *Chestnut* held that earlier precedent had recognized the existence of a citizen's "clearly established right to watch police-citizen interactions at a distance and without interfering." 947 F.3d at 1090 (citing *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005)). Moreover, recognizing that "[e]very circuit court to have considered the question has held that a person has the right to record police activity in public," this Court remarked further that "this robust consensus" also "suggests

6

that, if the constitution protects one who records police activity, then surely it protects one who merely observes it—a necessary prerequisite to recording." *Id.*

The rights to observe and record police-citizen interactions derive from the First Amendment. Although *Chestnut*—like *Walker*—was itself a Fourth Amendment case and did not explicitly name the First Amendment as the source of these rights, each case *Chestnut* relied upon to find "this robust consensus"—and indeed each case in which another circuit court has considered the question—grounded that right in the First Amendment. *See Fields v. City of Philadelphia*, 862 F.3d 353, 355 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678 (5th Cir. 2017); *Gericke v. Begin*, 753 F.3d 1 (1st Cir. 2014); *Am. Civil Liberties Union of Ill. v. Alvarez*, 679 F.3d 583 (7th Cir. 2012); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000); *Fordyce v. City of Seattle*, 55 F.3d 436 (9th Cir. 1995); *see also Walker*, 414 F.3d at 992.[1] "Simply put, the First Amendment protects the act

---

[1]    Acknowledging the well-established right to curse or shout at police officers carrying out their official duties, *Chestnut* held that *Walker* provided a reasonable officer notice of the right to observe police because "[s]urely if officers cannot seize someone who criticizes or curses at them while they perform official duties, they cannot seize someone for exercising the necessarily included right to observe the police in public from a distance and without interfering." 947 F.3d at 1091. To support this conclusion, *Chestnut* relies on cases that themselves ground the right to curse or shout in the First Amendment. *See id.* (citing *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017) (in turn citing *City of Houston v. Hill*, 482 U.S. 451, 461 (1987); *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014); *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002)).

Appellate Case: 21-1830    Page: 7    Date Filed: 02/03/2022 Entry ID: 5123839

of photographing, filming, or otherwise recording police officers conducting their official duties in public." *Fields*, 862 F.3d at 356. Furthermore, this Court described the right to record as necessarily inclusive of the right to observe police-citizen interactions. *Chestnut*, 947 F.3d 1085.

Taking the evidence in favor of Molina and Vogel, their presence at Page and Walton was to observe, and for Vogel also to record, how police were relating with citizens. Molina and Vogel observed police-citizen interactions at a distance and without interfering, just like the *Chestnut* plaintiff. Indeed, observing the police and gathering accurate information their interactions with citizens was one of their primary goals. (App. 200; R. Doc. 171-1, at 10 (Molina Dep. 35, 37); App. 453; R. Doc. 171-5, at 143–45 (Vogel Dep. 143–45).)[2] Vogel video-recorded multiple police-citizen interactions to document how the police were performing their duties, narrating some videos with factual, contemporaneous information about what was happening on the ground. (App. 1047; R. Doc. 183-2 (video of munitions in park), App. 1126; R. Doc. 183-6 (video of police approach); *see also*

---

[2] Molina testified that "one of the main things that I was trying to do was identify which officers were there so that if there was an event where they did use excessive force and hurt somebody or broke the law, that we'd be able to identify which officers or what vehicles were there doing it, have an idea of how many officers were involved and if there were any white shirts or high ranking officers who were ordering it or permitting it." Vogel testified that she was at the protest as a "legal observer" whose task was to "observe the behavior of police at protests and document the behavior" by "recording and written logs."

8

App. 1049–50; R. Doc. 183-4, at 1–2 (photographs of munitions recovered); App. 325–26; R. Doc. 171-5, at 17–18 (Vogel Dep. 17–18).)

*Chestnut* is binding and establishes that the rights to observe and record police-citizen encounters arise under the First Amendment. The cases relied upon by *Chestnut* explain these are First Amendment rights, and there is no apparent other source of such rights. Yet observing and recording were not Molina and Vogel's only First-Amendment-protected activities.

> ### b.  Molina and Vogel exercised their rights of peaceable assembly, first at Page and Walton and then on Euclid on the sidewalk and yard in front of Molina's house.

"The right of peaceable assembly is a right cognate to those of free speech and free press and is equally fundamental." *De Jonge v. State of Oregon*, 299 U.S. 353, 364 (1937). Indeed, free assembly is critical to "the very idea of a government, republican in form," which requires that citizens be permitted to consult one another on what to do about public affairs. *Id.* (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1875)). In *De Jonge*, the plaintiff was convicted under a state anti-syndicalism law for attending a meeting arranged by the Communist Party. The Court reversed the conviction and struck down the law, even though the plaintiff might have been properly charged for other activity. The Court expressed concern about the law's effect on individuals who had attended the meeting but not engaged in crimes:

9

> [P]eaceable assembly for lawful discussion cannot be made a
> crime. . . . If the persons assembling have committed crimes
> elsewhere, . . . , they may be prosecuted . . . . But it is a different
> matter when the State, instead of prosecuting them for such offenses,
> seizes upon mere participation in a peaceable assembly and a lawful
> public discussion as the basis for a criminal charge.

*Id.* at 260; *see also Sellers v. Johnson*, 163 F.2d 877, 881 (8th Cir. 1947)

("Certainly the fundamental rights to assemble [and] to speak . . . cannot be

abridged merely because persons threaten to stage a riot or because peace officers

believe or are afraid that breaches of the peace will occur if the rights are

exercised.").

Here, Molina and Vogel engaged in First-Amendment-protected activity by

exercising their right to peaceably assemble and engage in conversation: first at the

protest site at Page and Walton,[3] then some 1,500-feet away in front of Molina's

house on Euclid south of Maple. When they first reached Euclid, it was just the

two of them and Molina's neighbor.[4] (App. 215; R. Doc. 171-1, at 25 (Molina Dep.

94).) But as time passed, they designated that area as a place for discussion:

"People came up to talk to us, so we had set this location as a — as like a safe

---

[3] Molina agreed that she was assembled with protestors, *see* App. 205; R. Doc.
171-1, at 15, Molina Dep. 55 ("I was assembled with them") but emphatically
denied that she had a purpose in common with anyone who threw anything. (*Id.*
55–56.)

[4] *See City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (commenting that if a
person's "loitering is in fact harmless and innocent," dispersing such a person "is
an unjustified impairment of liberty").

meeting space away from Walton and Page that — that people could meet up at."
(App. 215; R. Doc 171-1, at 25 (Molina Dep. 97).) Their right to assemble was at
its zenith on Molina's property and the public sidewalk in front of it. *See City of
Ladue v. Gilleo*, 512 U.S. 43, 58 (1994) (recognizing "[a] special respect for
individual liberty in the home has long been part of our culture and our law; that
principle has special resonance when the government seeks to constrain a person's
ability to *speak* there"); *McCullen v. Coakley*, 573 U.S. 464, 488 (2014)
(emphasizing that the government's power to restrict First-Amendment-protected
activity on public sidewalks is "very limited" and "while the First Amendment
does not guarantee a speaker the right to any particular form of expression, some
forms—such as normal conversation and leafletting on a public sidewalk—have
historically been more closely associated with the transmission of ideas than
others").

> c. *Molina and Vogel participated in the protest and intended to convey—by their presence and clothing—a particularized pro-protest message that would be understood by onlookers.*

Molina and Vogel also engaged in First-Amendment-protected activity as
participants in the protest. Participating in a public protest is expressive activity
protected by the First Amendment. *Edwards v. South Carolina*, 372 U.S. 229, 235–
36 (1963) (describing publicly gathering to express grievances to officials as "an
exercise of . . . constitutionally protected rights of free speech, free assembly, and

Appellate Case: 21-1830     Page: 11     Date Filed: 02/03/2022 Entry ID: 5123839

freedom to petition for redress of their grievances . . . in their most pristine and classic form"); *see also Grayned v. City of Rockford*, 408 U.S. 104, 116 (1972); *McCullen*, 573 U.S. at 476 (recognizing that public streets and sidewalks "occupy a special position in terms of First Amendment protection")*.* Molina and Vogel did not *accidentally* happen upon the protest; they traveled there on purpose, stayed for hours, and intended to convey a message by their presence and participation. (App. 198, 199, 203; R. Doc. 171-1 at 8, 9, 13 (Molina Dep. 27, 33, 46–47 (explaining when she arrived and how long she stayed)); App. 329, 331; R. Doc. 171-5 at 21, 23 (Vogel Dep. 21, 23 (same)); App. 205; R. Doc. 171-1 at 15, Molina Dep. 55–56 (intended to express a message).) Their message—*that they support the right of protest*—was amplified by their neon-green hats, which proclaimed both their affiliation and their role within the larger demonstration. (App. 211, R. Doc. 171-1, at 21 (Molina Dep. 80).) Their intended message—to both police and protestors— might have been more abstract than others', but that distinction does not strip their expression of its constitutional protection. *Hurley v. Irish-Am., Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 569 (1995).

Molina and Vogel participated in the protest with an intention to convey a particularized pro-protest message. Molina's chief motivation for participating in the protest was to be "a protector of the right to protest" (App. 205; R. Doc. 171-1, at 15 (Molina Dep. 56)) and she intended to convey a message about that right:

12

Molina's intent was "expressing that a person has the right to protest." (*Id.*) To express this message, she abandoned other plans, went to the protest site, and stayed for some five hours. (App. 196–197, 199, 210; R. Doc. 171-1 at 6–7, 9, 20 (Molina Dep. 21–22, 30, 33, 76).) While there, she wore a neon-green hat that read "National Lawyers Guild Legal Observer," a distinctive piece of clothing whose color and wording amplified her individualized message.[5] (App. 205, 211; R. Doc. 171-1, at 15, 21 (Molina Dep. 57–58, 81).) Vogel, too, wore such a hat. (App. 441; R. Doc. 171-5, at 133–34 (Vogel Dep. 133–34).) The hats communicated her membership in "an association of lawyers that have an interest in social justice and public interest," with which she had volunteered to be a legal observer who documented police conduct at public protests. (App. 451–53; R. Doc. 171-5, at 143–45 (Vogel Dep. 143–45).) Molina and Vogel wore the bright neon hats to amplify and particularize their message that they championed the right of protest.

---

[5]     The First Amendment is concerned with the conveyance of messages and ideas. Observing or recording police-citizen activities without interference tells those police officers that they should act appropriately because they are being watched. Words need not be utilized. *See Spence v. Washington*, 418 U.S. 405 (1974) (listing cases recognizing "communicative connotations" of conduct related to flags and recognizing extension of First Amendment protection to "expression of an idea through activity"). To the extent that words must be involved, Molina and Vogel's donning of caps bearing particular words is intended to alert police officers to the presence of trained observers documenting their conduct and, thus, is expressive activity. *See United States v. Grace*, 461 U.S. 171, 176–77 (1983) (recognizing that picketing and leafletting are "no doubt . . . expressive activities involving 'speech' protected by the First Amendment").

Appellate Case: 21-1830     Page: 13     Date Filed: 02/03/2022 Entry ID: 5123839

(App. 211–12; R. Doc. 171-1, at 21–22 (Molina Dep. 81–82).) And the hats worked—to their detriment. It is the hats that made them identifiable to the officers as having engaged in First-Amendment-protected activity. (*See* App. 1048; R. Doc. 183-3, at Bates 0039 (characterizing the people south of Page on Euclid as "protestors"); App. 808; R. Doc. 171-18, at 12 (Book Dep. 48 (when asked what a legal observer was, testifying "[t]hey're the ones with the yellow hats on")); App. 872; R. Doc. 171-19, at 19 (Busso Dep. 133); App. 529; R. Doc. 171-7, at 9 (Mayo Dep. 36).)

The hats themselves are pure speech in the context of a protest. Wearing them was First-Amendment-protected activity and doing so could not constitutionally motivate the deployment of chemical munitions. *See Cohen v. California*, 403 U.S. 15, 18 (1971). Perhaps more importantly, the hats also explained why Molina and Vogel had decided to participate in the protest, laying out the particularized message they intended to convey. As this Court held in *Baribeau v. City of Minneapolis*, 596 F.3d 465, 475 (8th Cir. 2010), "an actor's conduct is sufficiently expressive to merit First Amendment protection if the actor had an intent to convey a particularized message and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." (internal alterations omitted). In the surrounding circumstances—an ongoing public demonstration against police violence—that

14

pro-protest message would have been understood by any onlooker who read their hats.[6]

Molina and Vogel's personal message may have complemented rather than paralleled the message intended by other protestors, but their expression conveying that message was equally as protected. *See Hurley*, 515 U.S. at 569 (rejecting the argument that only words are protected by the First Amendment and holding that "a narrow, succinctly articulable message is not a condition of constitutional protection," which is not confined to "expressions conveying a particularized message") (internal quotation marks and citation omitted)); *id.* at 574 ((recognizing that in general all speakers have First Amendment right to tailor their own speech, including "ordinary people engaged in unsophisticated expression"); *West Virginia Bd. of Ed. v. Barnette*, 319 U.S. 624, 632 (1943) (remarking that "[s]ymbolism is a primitive but effective way of communicating ideas" and can include colors and distinctive types of clothing). *See also Robb v. Hungerbeeler*, 370 F.3d 735, 744 (8th Cir. 2004) (incorporating *Hurley*'s guidance that "a narrow, succinctly

---

[6] *Baribeau* also explains a message need not be fully understood nor evaluated instant-by-instant to constitute protected speech. The anti-consumerism message in *Baribeau* was—to say the least—not consistently and effectively conveyed by, for example, dressing as zombies and playing music interspersed with announcements like "brain cleanup on aisle 5." Indeed, the conduct had first come to law enforcement's attention because a complainant emphasized a *non*-expressive aspect of the conduct: "almost touching people." Nonetheless, this Court held that the expressive and non-expressive aspects of this course of conduct could not be separated. *See id.* at 477.

Appellate Case: 21-1830     Page: 15     Date Filed: 02/03/2022 Entry ID: 5123839

articulable message" is not required for constitutional protection); *Interactive Digital Software Ass'n v. St. Louis Cnty.*, 329 F.3d 954, 975 (8th Cir. 2003) (same); *Tindle v. Caudell*, 56 F.3d 966, 969 (8th Cir. 1995) ("What one chooses to wear can communicate an expressive message to others.").

Furthermore, Molina also supported the protestors' message of "expressing outrage at police violence." (App. 207; R. Doc. 171-1, at 17 (Molina Dep. 63).) To that end, she not only attended the protest when it was stationary but participated in a march. (App. 202; R. Doc. 171-1, at 12 (Molina Dep. 42–43).) Participating in a group march through traditional public fora like streets and sidewalks is quintessential First-Amendment-protected activity. *See Hurley*, 515 U.S. at 568 (reviewing precedents on "protest marches" and commenting on "the inherent expressiveness of marching to make a point"). Regardless of each individual marcher's motives, the marching itself, during which a marcher assembles and associates with others who share at least some aspects of their intended message, is expressive conduct protected by the First Amendment. *Hurley*, 515 U.S. at 569 ("a private speaker does not forfeit constitutional protection simply by combining multifarious voices, or by failing to edit their themes to isolate an exact message as the exclusive subject matter of the speech").

16

**II.  Molina and Vogel's protected First Amendment activities were "clearly established;" regardless, the officers cannot be entitled to qualified immunity because they acted unreasonably based upon their perception that Molina and Vogel were engaged in First Amendment activities.**

*a.  Molina and Vogel's rights were clearly established.*

Molina and Vogel's protected rights to observe and record police, assemble, and protest were clearly established on August 19, 2015. No later than February 2015, citizens in this circuit had the "clearly established right to observe police-citizen interactions at a distance and without interfering." *Chestnut*, 947 F.3d at 1090 (citing with approval cases concluding that there exists a right to observe and record the police in public and affirming denial of qualified immunity at summary judgment stage); *see also Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 839 (8th Cir. 2021) (collecting cases denying qualified immunity to officers who retaliated against citizens for filming, observing, and challenging their conduct). No circuit has held the right to record police does not exist. *Project Veritas Action Fund v. Rollins*, 982 F.3d 813, 832 (1st Cir. 2020). Likewise, there is no question that Molina and Vogel's essential First Amendment rights to assemble and engage in expressive protest activities without retaliation were clearly established. A "citizen's right to exercise First Amendment freedoms 'without facing retaliation from government officials is clearly established.'" *Baribeau*, 596 F.3d at 481 (citing *Kilpatrick v. King,* 499 F.3d 759, 767 (8th Cir. 2007)); *see also De Jonge*, 299 U.S. 353 (establishing significance of the right to assemble).

17

Molina and Vogel had engaged in First-Amendment-protected activity, and they had a clearly established right to be from government retaliation because of it.

> b. *Although Molina and Vogel engaged in multiple First-Amendment-protected activities, the pertinent question is whether the police believed they had engaged in such activities.*

While their First Amendment rights were clearly established, Molina and Vogel need not prove that the right to engage in each specific activity was clearly established for qualified-immunity purposes. Instead, the "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Here, Molina and Vogel have submitted sufficient evidence to create a genuine question of whether the officers acted to retaliate against them for protected activity under circumstances where any objectively reasonable officer would know better.

For making out a submissible case of First Amendment retaliation, what matters is a defendant's *perception* about the plaintiff's activity. *Heffernan v. City of Paterson*, 578 U.S. 266, 268 (2016) (holding that police officer demoted for perceived political activity could make First Amendment retaliation claim even though he had not actually engaged in political activity). As the *Heffernan* Court pointed out, the official in that case had made a "factual mistake" about what the plaintiff had done but nonetheless had "acted upon a constitutionally harmful

18

policy whether [the plaintiff] did or did not in fact engage in political activity," causing direct harm. *Id.* at 273.

As such, whether Molina and Vogel were engaged in activities protected by the First Amendment is beside the point.[7] *See Heffernan*, 578 U.S. at 274 ("The upshot is that [an adverse action] based upon an [official's] belief that the [citizen] has engaged in protected activity can cause the same kind, and degree, of constitutional harm whether that belief does or does not rest upon a factual mistake."); *Hernandez v. Mesa*, 137 S. Ct. 2003, 2007 (2017) (holding in qualified-immunity context that "[f]acts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant"); *Hughes v. City of New York*, 680 Fed. App'x 8, 10–11 n.2 (2d Cir. 2017) (relying on *Heffernan* and reinstating contractor's First Amendment retaliation claim against district chancellor who banned him based on a "mistaken belief that he organized a demonstration" when in fact he was at the demonstration because he

---

[7] The officers were correct that Molina and Vogel engaged in protected activity, even if they did not fully understand the message. Like in *Quraishi*, where the deputy claimed he could not see who was in the vicinity where tear gas was shot because of the bright lights, *Quraishi v. St. Charles Cnty.*, No. 4:16-CV-1320 NAB, 2019 WL 2423321, at *7 (E.D. Mo. June 10, 2019), but they turned out to be press, here the officers claimed the plaintiffs were run-of-the-mill protestors, but they turned out to be legal observers. (*See* App. 1048; R. Doc. 183-3, City Bates 0039 (police report describing the people south of Page on Euclid as "protestors")*.) Either way, Molina and Vogel do not seek special entitlement beyond what is available to any citizen who engages, or is perceived as engaging, in protected activity.

19

had been assigned to observe it). Bottom line: whether Molina and Vogel really were engaged in First Amendment activity or instead incorrectly perceived as doing so, it was clearly established that the officers could not administer retribution for engaging in First Amendment activity as it is alleged the officers did here.

The evidence creates a genuine question of fact about whether the officers' perception (correct or mistaken) that Molina and Vogel had engaged in First-Amendment-protected activity that motivated the deployment of chemical munitions against them. Several of the officers associated the neon-green hats with protests or legal observers. (App. 808; R. Doc. 171-18, at 12 (Book Dep. 48); App. 872; R. Doc. 171-19, at 19 (Busso Dep. 133); App. 529; R. Doc. 171-7, at 9 (Mayo Dep. 36).) The police report itself describes the people south of Page on Euclid, against whom they deployed chemical munitions, as "protestors." (App. 1048, R. Doc. 183-3, at Bates 0039.) And two of the officers explicitly acknowledged the rights of individuals to be free from the alleged conduct. (*See* App. 534, R. Doc. 171-7, at 14 (Mayo testifying that a peaceful individual was allowed to be outside); App. 705–06; R. Doc. 171-15, at 36 (Mader testifying that if Appellees' allegations are true, there is a possibility that a crime was committed against them).) Objectively reasonable officers would have known at the time that they could not deploy chemical munitions at a person because they had earlier participated in a protest.

20

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert
Jessie Steffan
Molly Carney
Omri Praiss
American Civil Liberties Union
     of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org
mcarney@aclu-mo.org
opraiss@aclu-mo.org

Gillian R. Wilcox
American Civil Liberties Union
     of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Fax: (314) 652-3112
gwilcox@aclu-mo.org

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitation of this Court's order directing supplemental briefing because this brief contains 3,953 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief has been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

/s/ Anthony E. Rothert

Appellate Case: 21-1830    Page: 22    Date Filed: 02/03/2022 Entry ID: 5123839

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on February 3, 2022, thereby servicing attorneys of record.

/s/ Anthony E. Rothert

Appellate Case: 21-1830    Page: 23    Date Filed: 02/03/2022 Entry ID: 5123839