UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| Sarah Molina, et al., <br>     Plaintiffs-Appellees, <br> <br> v. <br> <br> Daniel Book, et al., <br>     Defendants-Appellants, <br> <br> and <br> <br> City of St. Louis, <br>     Defendant-Non-Party. | No: 21-1830 |

**<u>Petition for Rehearing by Panel and Rehearing En Banc</u>**

Pursuant to Federal Rules of Appellate Procedure 35 and 40, Appellees seek rehearing en banc and rehearing from the panel decision. Rehearing en banc is appropriate because the decision conflicts with decisions of this Court and the Supreme Court on questions of exceptional importance involving the nature and scope of First Amendment rights. Panel rehearing is warranted because the panel's majority decision misapprehends several points of law and fact.

**I.**     **<u>Rule 35(b)(1) Statement in Support of Rehearing En Banc</u>**

The district court concluded that Appellees Molina and Vogel could go forward with their First Amendment retaliation claims against police officers who singled them out for tear-gassing based on their distinctive hats, some 12 minutes

1

Appellate Case: 21-1830     Page: 1     Date Filed: 03/02/2023 Entry ID: 5251227

after a protest had ended and more than 1,000 feet away[1] from the protest, on Molina's private property. Taking Appellees' facts as true (as required), the district court denied qualified immunity to the officers because Molina and Vogel had engaged in First Amendment-protected conduct, the officers shot tear-gas canisters at them, and there was a genuine dispute of material fact as to causation—that is, the officers' motivation for deploying the canisters. The district court relied on several of this Court's decisions, including *Chestnut v. Wallace*, 947 F.3d 1085 (8th Cir. 2020), and *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005), in concluding that Molina and Vogel had exercised a clearly established right to observe and record the police.

The panel majority acknowledges that this Court had previously held there was a clearly established constitutional right to observe police without interfering. *Slip op.* at 6. Nonetheless, the majority grants qualified immunity to the officers because the right—though explicitly derived from First Amendment precedents—had been articulated within Fourth Amendment cases. *Slip op.* at 6–7. That ruling conflicts directly with *Walker* and *Chestnut* and "underappreciates the interplay between First and Fourth Amendment rights in this circuit's precedent." *Slip op.* at 20 (Benton, J., dissenting).

---

[1] The panel's majority decision incorrectly states that the protest and Molina's property were 550 feet apart. In fact, they were some 1,350 feet apart. (*See* JA212, 365, 366, 370.)

2

There are three additional conflicts.[2]

First, as the dissent states, the panel's majority decision also "violates the prior-panel rule" by disregarding *Hoyland v. McMenomy*, 869 F.3d 644 (8th Cir. 2017). *Slip op.* at 18 (Benton, J., dissenting). In contravention of *Hoyland*, the panel majority uses *Colten v. Kentucky*, 407 U.S. 104 (1972), to buttress its erroneous conclusion that Molina and Vogel had no clearly established First Amendment right to observe the police. The panel majority's application of *Colten* overlooks an intervening Supreme Court case, *City of Houston v. Hill*, 482 U.S. 451 (1987), and disregards *Hoyland*'s holding (relying on *Hill*) that *Colten* does not apply to a situation like the one in *Hoyland* or here: where an individual intends to exercise a constitutional right and peacefully observes the police without interfering, then is retaliated against in a residential area where public safety was not threatened and after following police instructions to disperse.

Second, the panel majority errs by requiring Molina and Vogel to show that their neon-green legal observer hats conveyed a "particularized" message. Such a requirement conflicts with *Hurley v. Irish-Am., Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 570 (1995), in which the Court held explicitly that symbolic expression need *not* convey a "particularized message" to obtain First Amendment

---

[2] If the Court addresses the panel majority's disregard for *Walker* and *Chestnut*, it need not reach any of the other conflicts between the panel's majority decision and preexisting precedent.

protection. The panel majority compounded that error by mischaracterizing this Court's decision in *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010), which held that some individuals' initially enigmatic conduct was expressive based on their subsequent explanation of their intended meaning. What happened in that case is instead correctly characterized by the panel dissent. *See slip op.* at 18.

<u>Third</u> and finally, the panel majority decision erred by inappropriately revisiting the district court's determinations that specific facts were genuinely in dispute. By engaging in its own factfinding, the panel majority disregarded a line of this Court's cases, including *Burbridge v. City of St. Louis*, 2 F.4th 774 (8th Cir. 2021), and *Taylor v. St. Louis Cmty. Coll.*, 2 F.4th 1124 (8th Cir. 2021). And it explicitly contradicts a prior decision, *Peterson v. Kopp*, 754 F.3d 594 (8th Cir. 2014), in which this Court held that an officer's motivation for deploying a chemical agent, which goes to the third (causation) prong of First Amendment retaliation, was a fact question that could not typically be taken from the jury.

On each of these points, the panel majority erred by disregarding prior panel decisions by which it was bound. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (recognizing the "cardinal rule . . . that one panel is bound by the decision of a prior panel"). Rehearing en banc should be granted to secure uniformity of this Court's decisions and because this case involves questions of exceptional importance about whether and when citizens have the

4

right to be free from retaliation for peacefully observing the police as they perform their public duties.

## II. En Banc Rehearing is Warranted

### A. *The panel's majority decision conflicts with two prior cases*, Walker *and* Chestnut, *that had clearly established a constitutional right to peacefully observe police in public.*

The panel's majority decision contradicts two prior decisions of this Court on a question of exceptional importance: whether there is a First Amendment right to peacefully observe the police. As the dissenting member of the panel pointed out, two prior decisions of this Court have "clearly established that the First Amendment protects peaceful police-observation in this circuit," and the panel erred by disregarding those decisions. *Slip op.* at 21 (Benton, J., dissenting).

As the panel majority acknowledged, this Court held in *Chestnut* that by 2014 there was "a clearly established right to watch police-citizen interactions at a distance and without interfering." *Slip op.* at 6 (quoting *Chestnut*, 947 F.3d at 1090 (8th Cir. 2020)). That holding rearticulated this Court's holding in *Walker v. City of Pine Bluff*, 414 F.3d 989, 993 (8th Cir. 2005), that "observing police officers *could not* be outlawed." *Slip op.* at 16 (Benton, J., dissenting).

Taking Appellees' facts as true (as required), observing police-citizen interactions at a distance without interfering—among other constitutionally protected activities—is precisely what Molina and Vogel did. To hold here that

5

Appellants are entitled to qualified immunity despite retaliating against Molina and Vogel for exercising that clearly established right contradicts both *Chestnut* and *Walker*, by which the panel was bound. *See Mader*, 654 F.3d at 800.

The panel majority discounts *Chestnut* and *Walker* because they involved Fourth Amendment claims. As the dissent explains, that is not dispositive: the plaintiffs in those cases were allowed to proceed on Fourth Amendment claims because they had been arrested for constitutionally protected conduct.³ That conduct was the observation of police, and the provision that protected that conduct was the First Amendment, not the Fourth. *Slip op.* at 20–21.

In Judge Benton's opinion, "*Walker* and *Chestnut* correctly attribute this right [to observe the police] to the First Amendment." *Slip op.* at 17 (citing *Brown v. Louisiana*, 383 U.S. 131, 141–42 (1966) (opinion of Fortas, J., announcing the judgment of the Court)). Further, the *Chestnut* decision "confirmed that the First Amendment gives rise to this right by citing seven First Amendment cases, including two from this circuit." *Slip op.* at 16 (collecting cases); *see Chestnut*, 947 F.3d at 1090–91.

---

³ The panel majority's decision also does not contend with the fact that the district court had also denied qualified immunity on the plaintiff's First Amendment claim. *Walker v. City of Pine Bluff*, No. 5:03-CV-00120, ECF No. 34 at 15–16 and No. 04-1969, Appellants' Br. 2.

6

To hold otherwise, as the panel majority does, is to "underappreciate[] the interplay between First and Fourth Amendment rights in this circuit's precedent." *Slip op.* at 20. As Judge Benton explains, there are two kinds of legal conduct that will not justify police seizure: conduct that *happens* to be legal and conduct that *must always be* legal. Skateboarding *may be* legal, and where it is, an officer cannot arrest a person for skateboarding. But some conduct *must always be* legal, including, for example, "praying the Rosary, pleading the Fifth, or even flying a Nazi flag" in a traditional public forum. *Slip op.* at 20.

Under *Chestnut* and *Walker*, peaceful police-observation without interference falls in this second category. That is, "this circuit's precedent clearly establishes that peaceful police-observation *must be* legal—it is constitutionally protected First Amendment activity." *Slip op.* at 21 (citing *Chestnut*, 947 F.3d at 1090, and *Walker*, 414 F.3d at 993). Thus, Molina and Vogel had a clearly established right to observe and record the police, and their First Amendment claims should be allowed to proceed. *Slip op.* at 21.

### B. As the dissent observes, the panel's majority decision also conflicts with Hoyland by applying Colten to allow retaliation for peaceful observation in a residential area without physical obstruction.

The panel majority relies on *Colten v. Kentucky*, 407 U.S. 104 (1972), to buttress its decision to bypass *Walker* and *Chestnut*, but that reliance is misplaced. *See slip op.* 18–19 (Benton, J., dissenting). In *City of Houston v. Hill*, 482 U.S.

7

451, 465 (1987), the Supreme Court distinguished *Colten* (which involved a facial claim) from peaceful-observation situations like this one. Then, in *Hoyland*, this Court cabined *Colten* in light of subsequent developments in the Supreme Court's First Amendment jurisprudence. *Hoyland*, 869 F.3d at 656. To resurrect *Colten* now to narrow the First Amendment right available to Molina and Vogel here would "violate[] the prior-panel rule" by repudiating *Hoyland*. *Slip op.* at 18 (Benton, J., dissenting). After *Hill* and *Hoyland*, it is clear that *Colten*'s admonition that there is "no constitutional right to observe the issuance of a traffic ticket or to engage the issuing officer in conversation at that time" means in the presence of traffic and requires physical obstruction. That interpretation also accords with *Chestnut* and *Walker*.

The panel majority erred by disregarding *Walker*, *Chestnut*, and *Hoyland*. The decision ignores binding precedent and narrows the scope of a foundational First Amendment right that has already been established in this circuit, something that "should not pass without comment." *Slip op.* at 18 n.7 (Benton, J., dissenting) (quoting *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 138 S. Ct. 1917, 1741–42 (2018) (Thomas, J., concurring in part and concurring in the judgment)).

> **C. The majority opinion conflicts with Peterson and contravenes a line of cases including Burbridge and Taylor. It engages in factual finding and disregards facts the district court found were adequately supported.**

8

The panel's factfinding about the officers' motivation in tear-gassing Molina and Vogel conflicts with this Court's decision in *Peterson*, 754 F.3d at 603, as well as a line of cases concerning the limited role for this Court in the resolution of genuine, material factual disputes at summary judgment, including *Burbridge*, 2 F.4th at 779–80, and *Taylor*, 2 F.4th at 1127.

In *Peterson*, a police officer pepper-sprayed Peterson after he failed to immediately obey an order to move. The officer said he had sprayed Peterson "as a reasonable reaction to an escalating situation." 754 F.3d at 603. Peterson said he had been sprayed in retaliation for talking back. This Court reversed an award of qualified immunity at summary judgment and held that when there are competing theories of causation, it is "generally a jury question" that cannot be decided on summary judgment unless it is "so free from doubt as to justify taking it from the jury." *Id.* (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

In *Burbridge*, this Court reiterated that it may not revisit a district court's conclusion that a dispute of fact precludes summary judgment *even if* it "disagree[s] with the district court as to whether there is sufficient evidence to conclude a material fact is genuinely in dispute." 2 F.4th at 779. Instead, the Court must "accept as true the facts that the district court found were adequately supported, as well as the facts the district court likely assumed." *Id.* at 779–80. In *Taylor*, this Court held that it looks beyond "an officer's characterization" of an

9

issue to "consider whether the argument, instead of raising a legal issue, is simply a claim that the plaintiff offered insufficient evidence to create a material issue of fact," something the Court cannot review at this stage. 2 F.4th at 1127 (internal quotation marks omitted).

Here, like in *Peterson*, there is a factual dispute about the officers' motivation in shooting tear-gas at Molina and Vogel: the officers say that though they were more than 1,000 feet away from the protest site, they were just following orders to clear the street. Molina and Vogel say they were targeted because of their neon-green hats, which marked them as protest attendees—something several officers testified they recognized. (*E.g.*, App. 808; R. Doc. 171-18, at 12; App. 872; R. Doc. 171-19, at 19; App. 529; R. Doc. 171-7, at 9.) The district court found that Appellees' version of the facts relating to causation were adequately supported. That is, the district court found there was sufficient evidence to conclude the material facts as to causation were genuinely in dispute. This Court must not only accept those facts but also make all reasonable inferences in favor of Appellees. *See, e.g., Burbridge*, 2 F.4th at 780–81; *Taylor*, 2 F.4th at 1127; *Riggs v. Gibbs*, 923 F.3d 518, 521 (8th Cir. 2019); *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018); *Brown v. Fortner,* 518 F.3d 552, 558 (8th Cir. 2008).

In disregarding the district court's factual findings and, instead, accepting as true the officers' explanation for their actions, the panel decision conflicts with

*Peterson* and disregards *Burbridge* and others that set out the standards for reviewing summary-judgment decisions. *See also Quraishi v. St. Charles Cnty.*, 986 F.3d 831, 838 (8th Cir. 2021) (holding in a First Amendment retaliation case involving an officer's deployment of a chemical munition that a "district court does not have to rely solely on [an officer's] account of events to discern what motivated him").

### D. *The panel deviated from established law in concluding that Molina and Vogel's neon-green hats emblazoned with "NATIONAL LAWYERS GUILD" were not expressive.*

Because the right to peacefully observe the police was clearly established by *Chestnut* and *Walker*, this Court need not consider the other ways in which Molina and Vogel exercised their First Amendment rights. However, if it reaches the issue, the panel's majority decision also conflicts with *Hurley*, 515 U.S. at 569–70, and *Baribeau*, 596 F.3d at 477. In direct contravention of *Hurley*, it improperly narrows what expression is protected by the First Amendment.[4]

Molina and Vogel's neon-green hats were material for two reasons. For one, several officers testified that they recognized people wearing neon-green hats as being associated with protests. The highly visible, brightly colored hats were what allowed the officers to identify and single out Molina and Vogel. In addition, the

---

[4] *See also slip op.* at 19 n.8 (Benton, J., dissenting) (pointing out that "[t]he First Amendment captures more than expressive conduct").

11

Appellate Case: 21-1830     Page: 11     Date Filed: 03/02/2023 Entry ID: 5251227

hats are expressive in their own right. Although the majority opined that the expressiveness of the hats was a "close call," it ultimately erred by holding that they needed to convey a *particularized* message to have the right to be free from retaliation for protected expression. *See slip op.* at 10.

In concluding they were not sufficiently expressive, the panel's majority decision violates *Hurley*, 515 U.S. at 569–70. The *Hurley* Court remarked that "[s]ymbolism is a primitive but effective way of communicating ideas," and explicitly held that "a narrow, succinctly articulable message is <u>not</u> a condition of constitutional protection, which if confined to expressions conveying a 'particularized message,' would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schöenberg, or Jabberwocky verse of Lewis Carroll." *Id.* at 569 (emphasis added).

In a footnote, the panel majority mischaracterizes this holding in *Hurley* as covering only parade-related expression, but of course Jackson Pollock paintings are not typically in parades. Instead, the Supreme Court must mean what it says: that the First Amendment protects even primitive, symbolic expression whose message may not be particularized. *Accord Robb v. Hungerbeeler*, 370 F.3d 735, 744 (8th Cir. 2004) (incorporating *Hurley*'s guidance that "a narrow, succinctly articulable message" is not required for constitutional protection); *Interactive Digital Software Ass'n v. St. Louis Cnty.*, 329 F.3d 954, 975 (8th Cir. 2003)

12

(same). The panel majority erred by requiring Molina and Vogel's message to be particularized in order to overcome the grant of qualified immunity.

The panel majority also strayed from the guidance of *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010), in two ways. First, that case makes clear that symbolic expression is protected even if its message can be understood only after explanation. *Id.* at 477; *see also slip op.* at 18 (Benton, J., dissenting). Second, it also states that <u>context</u> determines whether symbolic activity is expressive. *Id.* at 475; *see also Spence v. Washington*, 418 U.S. 405, 410 (1974).

In *Baribeau*, a group dressed as zombies walked through a downtown area. After other pedestrians complained about some of the group's non-expressive conduct (almost touching other people), police approached and asked what they were doing. The zombies explained they were costumed and playing messages like "get your brains here" in "protest of the 'mindless' nature of consumer culture." 596 F.3d at 470. The explanation provided upon request, along with the context, imbued the zombies' expression with its intended meaning. *See* 596 F.3d at 475 (holding that expressiveness is dependent on "the surrounding circumstances"); *see also Spence*, 418 U.S. at 407–10 (holding that a student's display of an upside-down American flag with a peace symbol was protected expression in part because of the context and environment in which it was undertaken).

13

Contrary to its characterization by the panel majority, the zombies' message in *Baribeau* was not (to say the least) universally understood as anticonsumerist; indeed, there was no evidence it was understood in the moment by anyone. *See* 596 F.3d at 471. The zombies did not—as the panel majority indicated—explain their actions "[d]uring the protest." *Slip op.* at 11. Their intent became known only when police *asked* them what they were doing. But that did not prevent their symbolic conduct from being expressive. 596 F.3d at 477.

Qualified immunity is a judicially created doctrine that is animated by important policy considerations. It would not serve its purpose if it is withheld from officers who first engage with potential suspects in an effort to understand their actions, like in *Baribeau*, and awarded to those who use retaliatory force as a first resort, like the officers here.

In any event, Molina and Vogel did have a particularized message: that people have the right to protest and they were there to protect that right. (*See, e.g.*, App. 205; R. Doc. 171-1, at 15.) That message was at least as well understood as the *Baribeau* zombies' message. (*E.g.,* App. 808; R. Doc. 171-18, at 12; App. 872; R. Doc. 171-19, at 19; App. 529; R. Doc. 171-7, at 9 (Appellant officers testifying they understood the neon-green hats to mark out legal observers whom they had seen at protests).)

14

In sum, the panel's majority decision conflicts with *Hurley* by requiring Molina and Vogel to make a showing about their expression that the Supreme Court has already explicitly ruled unnecessary to merit First Amendment protection. And even assuming a particularized message *were* necessary, the panel's majority decision conflicts with *Baribeau* by requiring evidence of contemporaneous understanding far beyond what was sufficient in that case.

### III. Panel Rehearing is Warranted

Panel rehearing is appropriate where the panel has overlooked or misapprehended a point of law or fact.

As explained, the panel decision conflicts with multiple binding precedents, including *Walker*, *Chestnut*, *Hoyland*, and *Peterson*. It disregards *Taylor* and *Burbridge*, *Hurley*, and *Baribeau*. Panel rehearing is appropriate to resolve the conflicts with those prior panel decisions and the Supreme Court decision by which this Court is bound.

Panel rehearing is also appropriate because the panel majority overlooks several factual points, including the genuinely disputed material facts about the officers' motivation in deploying the tear-gas. The panel majority takes things further: Although it recognizes that in the Fourth Amendment context, an officer's unreasonable mistake will not shield him from liability, it announces that an unreasonable mistake *does* merit qualified immunity in the First Amendment

15

context. In other words, as long as an officer claims he mistakenly believed he was carrying out orders—no matter how unreasonably—he cannot be held liable for retaliation. Such a supposition turns the otherwise-objective standards of the qualified-immunity test on their head.

The panel majority grounds this concerning conclusion in a misapprehension of *Mitchell v. Kirchmeier*, 28 F.4th 888, 896–97 (8th Cir. 2022). The panel majority cites *Mitchell* to support its position that the "only" reasonable conclusion here is that the officers were carrying out their duties and, therefore, even if what the officers believed was unreasonable, they are shielded from First Amendment liability. *See slip op.* p. 9–10. In *Mitchell*, however, this Court was reviewing a Rule 12(b)(6) dismissal. Its affirm rested on the plaintiff's *pleading* failure: a failure "to plead facts that make an inference of retaliatory animus plausible." *Mitchell*, 28 F.4th at 896–97. In that posture, this Court has a duty to test for plausibility, weeding out the conclusory allegations and taking the nonconclusory allegations as a whole. Here, to the contrary, the panel majority was not permitted to revisit the district court's conclusion that genuine disputes of fact as to the officers' motivation precluded summary judgment. *See Burbridge*, 2 F.4th at 779; *see also Taylor*, 2 F.4th at 1127.

Additionally, here, taking Appellees' facts as true and accepting the district court's conclusions about what material facts had been put genuinely in dispute,

16

there *is* a retaliatory explanation for the officers' actions: Molina and Vogel had dispersed as ordered; they never interfered; they observed police behavior at a distance and then congregated in front of Molina's house, where they were highly visible due to their neon hats. As the district court found and the panel majority could not revisit, there is a genuine dispute of fact about whether the officers' deployment of tear-gas was done in retaliation for Appellees' expressive conduct. The panel majority misapplied certain language from *Mitchell* without acknowledging the factual differences or posture of the case.

Panel rehearing is appropriate to allow this case to be decided on the factual record before this Court, including the genuine issues of material fact identified by the district court, and in adherence to binding precedents.

**V. Conclusion.**

For the foregoing reasons, this case should be reheard en banc or by the panel.

Respectfully submitted,

/s/ Jessie Steffan
Anthony E. Rothert
Jessie Steffan
American Civil Liberties Union
    of Missouri Foundation
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 652-3114
Fax: (314) 652-3112

trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox
American Civil Liberties Union
    of Missouri Foundation
406 West 34th Street, Suite 420
Kansas City, Missouri 64111
Phone: (816) 470-9938
Fax: (314) 652-3112
gwilcox@alcu-mo.org

18

CERTIFICATE OF SERVICE AND COMPLIANCE

    I hereby certify that on March 2, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system thereby serving attorneys of record. I further certify that this motion contains 3847 words, which is within the limitation allowed for a petition filed under Rules 35 and 40.

    /s/ Jessie Steffan