UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Sarah Molina *et al.*, | ) | |
| | ) | |
|     Plaintiffs/Appellees, | ) | Appeal No. 21-1830 |
| | ) | |
| v. | ) | |
| | ) | |
| Daniel Book *et al.*, | ) | |
| | ) | |
|     Defendants/Appellants | ) | |

## APPELLANTS' RESPONSE
## IN OPPOSITION TO PETITION FOR REHEARING

COME NOW Appellants Daniel Book, Joseph Busso, Lance Coats, Stephen Dodge, Joseph Mader, Michael Mayo, Mark Seper, and William Wethington ("Appellants"), and for their response in opposition to Plaintiffs' Petition for Rehearing state as follows:

With respect to Molina and Vogel's First Amendment Retaliation claims, the majority faithfully adhered to established qualified immunity jurisprudence, and correctly held that qualified immunity barred Plaintiffs' First Amendment Retaliation claims. Because the majority's decision follows from established law and does not conflict with any controlling authority, rehearing is not warranted with respect to these claims.

"As the Supreme Court has repeatedly stressed," courts are "not to define clearly established law at a high level of generality." *Anderson ex rel. Anderson v.*

1

Appellate Case: 21-1830    Page: 1    Date Filed: 03/31/2023 Entry ID: 5260740

*City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (quotation omitted); *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Ashcroft*, 563 U.S. at 742). Rather, the qualified immunity inquiry must be "undertaken in light of the specific context of the case, not as a broad general proposition" and must be "particularized" based on the facts confronting the officer. *Brosseau v. Haugen*, 543 U.S. 194 (2004). Indeed, the Supreme Court has sternly admonished that lower courts and plaintiffs cannot defeat qualified immunity by defining clearly established law at a high level of generality, "[o]therwise '[p]laintiffs would be able to convert the rule of qualified immunity… into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U. S. at 639).

Here, Plaintiffs' Petition for Rehearing does exactly what the Supreme Court has prohibited: define clearly established law at a high level of generality in an effort to overcome qualified immunity. Plaintiffs generally assert that, on August 15, 2019, "there was a clearly established constitutional right to observe police without interfering." Mot. at 2. Plaintiffs rely on *Walker* and *Chestnut* for this broad assertion, but they ignore the facts and claims in those cases, refuse to undertake the requisite particularized qualified immunity analysis based on the facts confronting the officers in this case, and ignore that, as the majority correctly recognized, neither *Walker* or *Chestnut* held that merely observing police, without saying anything,

2

constitutes *First Amendment expressive conduct and protected activity* pursuant to clearly established law existing on August 15, 2019.

Far from announcing a broadly defined "constitutional right to observe police" regardless of the circumstances, this Court's narrow holding in *Chestnut* was that "merely observing police officers at work *cannot give rise to a reasonable inference that criminal mischief is afoot*." *Id*. at 1092. (emphasis added). This Court's narrow holding followed from the issue in *Chestnut*, which was whether observing police was itself indicative of criminal activity such that the defendant officer had reasonable suspicion, or at least arguable reasonable suspicion, to believe that Plaintiff Chestnut had engaged in criminal activity by observing police traffic stops sufficient to justify his detention. *Id*. at 1088. And, the question of whether observing police, without more, gives rise to reasonable suspicion that the police observer committed a crime followed from the plaintiff's Fourth Amendment claim alleging an unlawful seizure, wherein Plaintiff Chestnut alleged the defendant officer "detained, arrested, frisked, and handcuffed him without reasonable suspicion or probable cause to believe he had engaged in or was about to engage in *unlawful conduct* or that he was armed and dangerous." *Chestnut v. Wallace*, 947 F.3d 1085, 1088 (8th Cir. 2020) (emphasis added). Thus, this Court held, in reliance on its prior decision in *Walker*, that "no reasonable officer could conclude that a citizen's passive observation of a police-citizen interaction from a distance was

3

*criminal.*" *Chestnut*, 947 F.3d at 1090. (emphasis added). Neither *Walker* or *Chestnut* involved a First Amendment claim, and neither involved any challenge to the constitutionality of any statute or Ordinance on First Amendment grounds.

So, *Walker* and *Chestnut* clearly established that observing police, without more, is not a crime and does not alone give rise to reasonable suspicion that the observer committed a crime, but neither held that observing police is *First Amendment expressive conduct or First Amendment protected activity*. In their bid for rehearing, Plaintiffs rely on *Chestnut* and *Walker* to erroneously equate lawful activity with expressive activity under the First Amendment. This is error.

Certainly, there are innumerable actions that are not criminal, but which do not constitute expressive speech sufficient to invoke the protections of the First Amendment. For example, it is not a crime under normal circumstances to walk, to brush one's teeth, or to stand on a sidewalk, but no one would argue that these actions constitute speech under the First Amendment. The majority correctly recognized the axiomatic distinction between lawful conduct and First Amendment speech, and correctly held that *Walker* and *Chestnut* did not clearly establish that observing police constitutes First Amendment protected activity by stating as follows:

> It is not beyond the realm of possibility that a First Amendment right to observe police exists, but our Fourth Amendment cases like *Walker* and *Chestnut* do not clearly establish it. And it makes good sense why. It is one thing to conclude that officers cannot arrest someone passively standing by and watching as they do their job. After all, in the absence of interference, there is no crime in it. But it is another

Appellate Case: 21-1830   Page: 4   Date Filed: 03/31/2023 Entry ID: 5260740

matter to say that watching is itself expressive. Expressive of what? Not even Molina and Vogel can provide a clear answer.

*Molina v. City of St. Louis, Missouri*, 59 F.4th 334, 340 (8th Cir. 2023).

Qualified immunity protects all but the plainly incompetent and those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 335 (1986). With that in mind, a reasonable officer would understand from *Walker* and *Chestnut* only that observing police is not, without more, criminal or otherwise grounds for reasonable suspicion that criminal activity is afoot such that the observer could not be constitutionally arrested or charged with a crime for observing alone. But, holding that observing police at a distance and without interfering does not give rise to arguable probable cause or reasonable suspicion of *criminal activity* is a far cry from holding that observing police is protected First Amendment Activity.[1] No reasonable officer would divine from *Chestnut* or *Walker's* holdings that observing police is itself expression, and so qualified immunity applies. To grant rehearing and hold otherwise based on Plaintiffs' highly general definition of the right at issue, which disregards the facts and circumstances at issue in the cases upon which they rely, would contravene qualified immunity jurisprudence and fly in the face of the Supreme Court's stern and repeated instruction that lower courts must are "not…

---

[1] In addition to watching the officers at a distance, there was also evidence that, when asked what he was doing, Walker responded that he was watching the town's "finest in action." *Chestnut*, 947 F.3d at 1089 (8th Cir. 2020). Here, there is no evidence that Molina or Vogel said anything to the Appellant Officers.

5

define clearly established law at a high level of generality." *Anderson*, 934 F.3d at 881; *White v. Pauly*, 137 S. Ct. at 552 (quoting *Ashcroft*, 563 U.S. at 742).[2]

To grant rehearing and hold otherwise would also contravene the law in other Courts of Appeal which, both before and after August 19, 2015, have held that there was no clearly established First Amendment right to record the police. *See Frasier v. Evans*, 992 F.3d 1003, 1022 (10th Cir. 2021) (granting qualified immunity after collecting cases); *Turner v. Driver*, 848 F.3d 678, 687 (5th Cir. 2017) ("In light of the absence of controlling authority and the dearth of even persuasive authority,

---

[2] To grant rehearing and hold otherwise would also contravene the law in other Courts of Appeal which, both before and after August 19, 2015, have held that there was no clearly established First Amendment right to record the police. *See Frasier v. Evans*, 992 F.3d 1003, 1022 (10th Cir. 2021) (granting qualified immunity after collecting cases and describing circuit split on clearly established First Amendment right to record police in August of 2014); *Turner v. Driver*, 848 F.3d 678, 687 (5th Cir. 2017) ("In light of the absence of controlling authority and the dearth of even persuasive authority, there was no clearly established First Amendment right to record the police [in September of 2015]"); *Fields v. City of Phila.*, 862 F.3d 353, 358 (3d Cir. 2017) (granting qualified immunity to officers because it was not clearly established that recording police constituted protected First Amendment activity). Given that multiple Courts of Appeal have held it was not clearly established that recording police activity was protected by the First Amendment both before and after August 19, 2015, the Appellant Officers are entitled to qualified immunity where Molina and Vogel merely observed police activity. *Frasier*, 992 F.3d at 1023 (holding that "[a] circuit split will not satisfy the clearly established prong of qualified immunity") (quoting *Mocek v. City of Albuquerque*, 813 F.3d 912, 929 n.9 (10th Cir. 2015). The Supreme Court has "not yet decided what precedents – other than [Supreme Court decisions] – qualify as controlling authority for purposes of qualified immunity." *D.C. v. Wesby*, 138 S. Ct. 577, 591 n.8 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 665-66 (2012) (reserving the question whether court of appeals decisions can be "a dispositive source of clearly established law")); see also *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam).

6

there was no clearly established First Amendment right to record the police [in September of 2015]"); *Fields v. City of Phila.*, 862 F.3d 353, 358 (3d Cir. 2017) (granting qualified immunity to officers because it was not clearly established that recording police constituted protected First Amendment activity). Given that multiple Courts of Appeal have held it was not clearly established that recording police activity was protected by the First Amendment both before and after August 19, 2015, the majority correctly held that the Appellant Officers are entitled to qualified immunity where Molina and Vogel, at most, merely observed police activity. *Frasier*, 992 F.3d at 1023 (holding that "[a] circuit split will not satisfy the clearly established prong of qualified immunity") (quoting *Mocek v. City of Albuquerque*, 813 F.3d 912, 929 n.9 (10th Cir. 2015).

With regard to Plaintiffs' contention that the majority violated the prior-panel rule by disregarding *Hoyland v. McMenomy*, 869 F. 3d 644, it is without merit. Again, Plaintiffs ignore the materially different facts at issue in *Hoyland* in favor of general principles impermissibly defined at a high level of generality. In stark contrast to this case, *Hoyland* involved actual verbal speech. In *Hoyland*, when Plaintiff Hoyland "emerged from his house, he loudly criticized the officers' conduct toward [his wife] and repeatedly told them that she was physically disabled." *Hoyland v. McMenomy*, 869 F.3d 644, 655 (8th Cir. 2017). This verbal criticism was First Amendment protected activity because "[t]he First Amendment 'protects a

7

significant amount of verbal criticism and challenge directed at police officers.'" *Id*. (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)). The *City of Houston v. Hill*, which was quoted in *Hoyland*, also involved verbal criticism against police – a critically important and material factual distinction not acknowledged by Plaintiffs in their Petition for Rehearing.

Here, the majority's application of qualified immunity follows from *Hill* and *Hoyland*. Indeed, *Hill* "distinguished protected expression, such as 'words or conduct that annoy or offend,' from unprotected activities like 'stand[ing] near a police officer and persistently attempt[ing] to engage the officer in conversation while the officer is directing traffic at a busy intersection.'" *Molina*, 59 F.4th at 339 (8th Cir. 2023) (quoting *Hill*, 482 U.S. at 462 n.11, 465, 107 S.Ct. 2502 (citation omitted)). And, *Hoyland* similarly distinguished verbal speech opposing police action from non-verbal refusal to move when directed to do so.

And, contrary to Plaintiffs' contention, neither *Hoyland* or *Hill* overruled or "cabined" the Supreme Courts decision in *Colten v. Kentucky*, which remains controlling. *Colten v. Kentucky*, 407 U.S. 104, 109 (1972). In that case, *Colten* contended that by observing police issue a traffic citation he "was disseminating and receiving information," and therefore engaged in First Amendment activity. *Id*. The Supreme Court disagreed, calling this contention "nearly frivolous." *Id*. Plaintiffs now claim that the "panel majority's application of Colten overlooks [*Hill*]" and

8

Appellate Case: 21-1830     Page: 8     Date Filed: 03/31/2023 Entry ID: 5260740

claim further claim that "*Colten* does not apply to a situation like this one," but their sole proffered support for this contention rests on an overgeneralized description of *Hill's* holding that ignores *Hill's* materially different facts. Again, the majority's holding necessarily follows from *Colten* and *Hill* and, as the majority correctly noted, "*Hill* even touted the disorderly conduct statute in *Colten* as an example of the kind of properly tailored statute that 'infringe[d] no protected speech or conduct.'" *Molina*, 59 F.4th at 339 (citing *Hill* at 465 n.14, 107 S.Ct. 2502 (quoting *Colten*, 407 U.S. at 111, 92 S.Ct. 1953)). *Colten* remains controlling law, and the majority correctly followed it.

Plaintiffs also accuse the majority panel of "factfinding about the officers' motivation" in allegedly tear-gassing Molina and Vogel, but the majority did no such thing. Instead, the majority relied on the district court's factual suggestion that, "at the least," the defendant officers acted because Molina and Vogel's gathering was a continuation of an earlier unlawful assembly, and held that the district court erred in applying the law to these facts. *Molina*, 59 F.4th at 341. This was so because, assuming the facts as determined by the district court, the only reasonable inference to draw from these facts [as determined by the district court] is that the officers were "merely carrying out their duty as they underst[ood] it." *Id*. (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 897 (8th Cir. 2022). Certainly, whether qualified immunity applies is a question of law that this Court is empowered to decide under

9

a particular set of facts taken in the light most favorable to the Plaintiff, and the majority in this case correctly decided that qualified immunity does apply as a matter of law under the facts as determined by the district court – which include that the same officers accused of violating Plaintiffs' clearly established rights under these particular circumstances were with a police line that was "dodging rocks and bottles [thrown by members of an unlawful assembly] just a few minutes earlier." *Molina*, 59 F.4th at 341. And, as the Court explained, "retaliatory animus cannot be the driving force whenever officers act based on their 'understanding—however mistaken—of [their] official duties,' even if the mistake turns out to be 'unreasonable.'" *Molina*, 59 F.4th at 341.³

---

³ Defendants maintain that Plaintiffs invitation to move directly to the question of subjective intent runs contrary to the holding in *Nieves*, and would permit retaliatory use of force claims to proceed against officers who use force to disperse violent assemblies while policing protests, even where their actions are plainly objectively reasonable and supported by probable cause – such as where tear gas is deployed, after a warning, to disperse a violent mob actively engaged in violence against police. Under Appellees' theory, any member of such a mob could sue and subject officers to years of litigation on the "easy to allege" theory that the officers had impermissible subjective motives, and thereby bypass completely that there was plainly probable cause to disperse the mob using the objectively reasonable deployment of ultimately harmless chemical irritants. For that matter, Appellees approach would allow for First Amendment claims to attach to every use of force by a police officer, whether objectively reasonable and supported by probable cause or not, based on nothing more than a difficult to disprove allegation that the officer's otherwise objectively reasonable use of force was the result of some constitutionally impermissible subjective motivation. As the Supreme Court explained in *Nieves*, this defies established Supreme Court precedent which has "almost uniformly rejected invitations to probe subjective intent [of police officers]," and otherwise fails to account for the causal complexities involved in so called "retaliatory use of force"

With regard to Plaintiffs' continued insistence that their hats, which contained the innocuous inscription of "National Lawyer's Guild," were expressive, it is remarkable and unsupported for several reasons, including that there is no evidence that any Appellant Officer ever saw this innocuous inscription which, at best, merely identified Molina and Vogel as Lawyers but did not contain any expressive message. Indeed, Vogel testified that, aside from "National Lawyer's Guild," she is "not exactly sure what [her hat] says" because she "never took the time to read it." (App. 453 R. Doc. 171-5, at 145). While Molina later testified that she "was there as a protector of the right to protest," neither she or Vogel *said* so, and neither engaged in expressive conduct that would have communicated any message to onlookers. Instead, they observed police activity and protests without participating – much as any curious observer of police activity might whose intentions and opinions remain uncommunicated and unknown. This is not, without more, First Amendment protected activity. Even the district court did not find that the Plaintiff's dress constituted First Amendment expression or speech, and the District Court instead construed Plaintiffs' First Amendment claim to be that they were retaliated against for *observing* a protest. (App. 1566 R. Doc. 201, at 17 ("Viewed in the light most favorable to Plaintiffs, the evidence permits an inference that Defendants recognized

---

claims, which are substantially equivalent to those identified by the Supreme Court in *Hartman* and *Nieves*. *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724 (2019) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011)).

11

Molina and Vogel as legal observers")). But, as set forth above, it was not clearly established in August of 2015 that observing police was protected First Amendment activity.

So, the majority correctly held that neither the Plaintiffs conduct or their hats constituted clearly established speech or otherwise conveyed a particularized message with a great likelihood that the particularized message would be understood by those who viewed it, and correctly held that not every reasonable officer would understand the hats to be expressive. *Cf. Baribeau v. City of Minneapolis*, 596 F.3d 465, 477 (8th Cir. 2010). Indeed, it is undisputed that several of the defendant officers in this case had no idea what the plaintiffs' hats were or what, if anything, they meant. *Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*, 515 U.S. 557 (1995), relied upon by Plaintiffs, does not change that no reasonable officer could have understood that innocuous green hats which, at most, identified Plaintiffs as lawyers and non-protesting observers constituted First Amendment speech in and of themselves. This is particularly true because, as the majority noted, "*Hurley* involve[d] 'the protected expression that inheres in a parade,' not in specific articles of clothing." *Molina*, 59 F.4th at 341 (citing *Hurley*, 515 U.S. at 569). Thus, *Hurley* "could not have clearly established a First Amendment right to wear the bright green hats" worn by Molina and Vogel in this case.

For these reasons, the panel majority's opinion is manifestly correct in its disposition of Molina and Vogel's claims such that rehearing is not warranted. Plaintiffs' Motion for Rehearing should be denied.

Still, in the event the Court granted rehearing, it would give the opportunity for the Court to reconsider the panel's incorrect denial of qualified immunity to the Defendants, excepting Dodge, on Plaintiff Groce's First Amendment Retaliation claim where, after an adequate period of discovery, Plaintiff failed to demonstrate any individual defendant's personal involvement in the alleged retaliatory launching of a single tear gas canister or that any had the opportunity to intervene and failed to – which runs afoul of the fundamental principle that "[l]iability for damages for a federal constitutional tort is personal, so each Defendant's conduct must be independently assessed." *Wilson v. Northcutt*, 441 F.3d 586, 591-92 (8th Cir. 2006); see also *Roberts v. City of Omaha*, 723 F.3d 966, 974 (8th Cir. 2013) ("we emphasize the District Court did not conduct an individualized analysis of each officer's alleged conduct to determine whether the factual allegations against each individual officer were sufficient to overcome qualified immunity"); see also, e.g., *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002) ("[A] plaintiff could not hold an officer liable because of his membership in a group without a showing of individual participation in the unlawful conduct."). Allowing multiple defendant officers to be subjected to the burden of

13

trial so that a jury may effectively guess, based on nothing at all, which pulled the trigger runs contrary to the requisite individualized analysis required under § 1983 and to the law in this circuit and others. *See, e.g., Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291-92 (3d Cir. 2018 (no police officer could be liable under § 1983 for excessive force, absent identification of specific officer who kicked arrestee in face); *Pineda v. Hamilton Cnty. Ohio*, 977 F.3d 483, 492 (6th Cir. 2020) (three sheriff s deputies were not liable for use excessive force under § 1983, absent plaintiff's identification of specific deputy who struck him); cf. *White v. Jackson*, 865 F.3d 1064, 1080-81 (8th Cir. 2017) (holding, on fundamentally different facts, that qualified immunity did not apply where there was specific evidence that four defendant officers were personally involved in plaintiff's arrest in particular ways).

For these reasons, Defendants ask that rehearing be denied but submit that, if rehearing is granted, the Court should hold that qualified immunity bars all three of the Plaintiffs' First Amendment claims.

Respectfully submitted,

SHEENA HAMILTON
CITY COUNSELOR

/s/Andrew D. Wheaton #65369 (MO)
wheatona@stlouis-mo.gov
Deputy City Counselor
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of March, 2022, the foregoing was filed and served on counsel of record for appellees by means of the Court's electronic filing system.

 /s/Andrew Wheaton 

## CERTIFICATION OF COMPLIANCE

### CERTIFICATION OF TYPE AND VOLUME LIMITATION

I hereby certify that the text of the foregoing reply complies with the Court's Order in that it contains 3,766 words of proportionally spaced text, excluding the cover page, table of authorities, table of contents, and certificates, as determined by the automated word count of the Microsoft Word 2010 word processing system and has 14 point print size, and otherwise conforms to the court's rules.

/s/ Andrew Wheaton  
Associate City Counselor
